UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

LISA BLACKMAN GRABEL,

       Plaintiff,     **REPORT AND**
                 **RECOMMENDATION**
                CV 18-1154 (ADS) (ARL)

    -against-

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

        Defendant.
-----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

   Plaintiff Lisa Blackman Grabel ("Plaintiff") commenced this action pursuant to the

Social Security Act, 42 U.S.C. § 405(g) seeking judicial review of a final decision of defendant

Nancy A. Berryhill (the "Commissioner" or "Defendant"), the acting commissioner of the Social

Security Administration ("SSA") at the time of filing, which denied her application for disability

insurance benefits.  Presently before the undersigned, upon the referral of the Honorable Arthur

D. Spatt for Report and Recommendation, are the parties' cross-motions for judgment on the

pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the reasons set

forth below, the undersigned respectfully recommends that (1) Plaintiff's motion for judgment

on the pleadings be denied (2) Defendant's cross-motion for judgment on the pleadings be

denied and (3) the case be remanded to the Commissioner for further proceedings consistent with

this Report and Recommendation.

**BACKGROUND**

# I.     Procedural History

On April 14, 2015, Plaintiff met with a representative of the SSA and completed her application for social security benefits, including a period of disability and all insurance benefits available under Title II and Part A of title XVIII of the Social Security Act (the "Act"). Transcript of the Record of Proceedings ("Tr.") at 38-39.  In her application, Plaintiff alleged that her disability began on September 17, 2014 and that her disability was continuing.  *Id.* Plaintiff claimed that she was unable to work because of physical conditions related to her back, numbness in arms, legs and fingers, neck, and headaches.  *Id.* at 214.  Plaintiff stopped working on September 17, 2014.  *Id.* at 47.

After conducting an initial review, on June 19, 2015, the SSA denied Plaintiff's application for benefits.  *Id.* at 79-90.  As Plaintiff disagreed with the determination made on her claim for disability worker benefits, on July 15, 2015, she requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 91.  A hearing was conducted on August 30, 2017, before ALJ Andrew S. Weiss.  *Id.* at 42-66.  Plaintiff appeared at the hearing and provided testimony.  *Id.*

On September 15, 2017, the ALJ issued a decision finding Plaintiff was not disabled.  *Id.* at 12-26.  On October 3, 2017, Plaintiff requested a review of the ALJ's decision.  *Id.* at 177. The Appeals Council denied Plaintiff's request for review on January 4, 2018, thus the ALJ's decision became the final decision of the Commissioner.  *Id.* at 1.

Plaintiff commenced the instant action on February 22, 2018, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  ECF No. 1.  On August 24, 2018, Plaintiff moved for judgment on the pleadings.  ECF No. 14.  Defendant cross moved for judgment on the pleadings on October 22, 2018.  ECF No. 16.  The fully briefed motions were

filed on November 13, 2018.  By Order dated April 1, 2019, Judge Spatt referred the cross-motions to the undersigned for a Report and Recommendation.  ECF No. 21.

## II. Factual Background

### A. Non-Medical Evidence

Plaintiff was born on October 20, 1961.  Tr. at 45.  Plaintiff graduated from Trenton State University and worked as a supervisor/teacher in a daycare program for a year and a half from March 2013 to September 2014.  *Id*. at 147–49.  Prior to the supervisor position, Plaintiff owned a morning and after school enrichment program for twenty-three years.  *Id*.

Plaintiff testified that she is divorced and has a son in the Coast Guard.  *Id*. at 52.  She stated that she tries to do grocery shopping but can only manage to pick up a few items each day and that she is unable to do any house work.  When her son is off, he will go shopping with her. *Id*.  Plaintiff testified that she has limitations with driving.  Specifically, she does not drive at night, her peripheral view is reduced, and she has issues with her neck.  *Id*.  Plaintiff further testified that she has difficulty climbing stairs and must take each step one by one.  *Id*.

### B. Medical Evidence

#### a. Darla Lynch, M.D. and Dmitriy Fuzaylov (Malverne Health & Rehabilitation)

On September 19, 2014, Plaintiff saw Darla Lynch, M.D. for an initial consultation.  *Id*. at 247.  Plaintiff testified that she slipped and fell on juice spilled on the floor at work on September 17, 2014.  *Id*. at 48.  Plaintiff complained of neck, back, and right knee pain as a result of the fall two days earlier.  *Id*. at 247.  A physical examination revealed a reduced range motion in Plaintiff's cervical and lumbar spine and knees with muscle spasms present on both sides of the cervical spine.  *Id*. 248-49.  In addition, Plaintiff experienced tenderness and muscle tension on both sides of the lumbar spine and the right knee with swelling.  Manual muscle

testing was 4/5 and sensation was normal except for increased sensation at the C7 and L5 dermatomes when compared to the other side.  *Id*. at 249–50.  Dr. Lynch diagnosed Plaintiff with cervical disc degeneration, cervical segment dysfunction, thoracic segment dysfunction, lumbar segment dysfunction, lumbar disc displacement, knee contusion, and joint pain in the lower leg and knee.  *Id*. at 250.  Dr. Lynch recommended that Plaintiff undergo manipulation and therapeutic exercise, massage therapy, acupuncture treatment and ordered X-rays to Plaintiff's neck.  *Id*.

Plaintiff underwent X-rays of the cervical spine on September 23, 2014 which showed moderate degenerative joint disease with disc desiccation, subchondral sclerosis, and decreased disc space at C3-4 to C7; canal encroachment at C4-6; and, malposition of C1 and flexion malposition of C5 with evidence of cervical instability noted at retrolisthesis C4-5.  *Id*. at 238.  The X-ray also revealed that there were no recent fractures or dislocation.  *Id*.

On October 6, 2014, Plaintiff saw Dimitriy Fuzaylov, M.D. a physiatry/pain management specialist in the same practice as Dr. Lynch.  *Id*. at 251.  Plaintiff complained of neck, back and right knee pain.  Dr. Fuzaylov noted reduced range of motion in the cervical and lumbar spine and indicated that Plaintiff's knee pain had improved.  *Id*. at 251-52.  Dr. Fuzaylov found tenderness to the digital palpation and muscle tension on both sides of Plaintiff's cervical spine, and positive trigger points; tenderness and muscle tension on both sides of the thoracic spine; tenderness to digital palpation and muscle tension on both sides with muscle spasms on the left side of the lumbar spine; and, tenderness in the right knee.  A neurological exam of Plaintiff conducted by Dr. Fuzaylov showed increased sensation in the C5 dermatome and the left L5 dermatome.  *Id*. at 251-253.  Dr. Fuzaylov's report indicated that there was no change to the original diagnosis of Dr. Lynch on September 19, 2014.  *Id*. at 253.  Dr. Fuzaylov prescribed

Tramadol and recommended that Plaintiff undergo chiropractic treatment, massage therapy and that she have an MRI of the cervical spine. *Id*.

On October 27, 2019, Plaintiff had an MRI of the cervical spine that showed prominent circumferential disc bulge at C3-C4 which contacts and flattens the ventral aspect of the cervical cord without high-grade compression or cord signal abnormality and formal disc herniations with compression of the exiting left C4 and exiting right C5 nerve roots. *Id*. at 239-40. At a follow-up appointment the same day, Dr. Fuzaylov recommended that Plaintiff receive chiropractic treatment, massage therapy and that Plaintiff continue with Tramadol as needed. *Id*. at 257.

On November 20, 2014, Plaintiff once again saw Dr. Lynch who ordered an MRI of the lumbar spine. This MRI reveled multilevel degenerative disc and facet disease, disk herniations, and a mild compression of the right L5 nerve root. *Id*. 241-242. Dr. Lynch recommended that Plaintiff undergo physical therapy. *Id*. An MRI of Plaintiff's left shoulder, requested by Dr. Fuzaylov, was performed on December 28, 2014. *Id*. at 241. This MRI revealed a partial thickness tear of the supraspinatus tendon and mild degenerative changes of the acromioclavicular joint. *Id*. at 245-246.

On January 12, 2015, Dr. Lynch completed a functional capacity evaluation. *Id*. at 356-57. Dr. Lynch opined that Plaintiff could sit at any one time for 30 minutes or less and for two hours or less cumulatively during an eight-hour work day; stand and/or walk for 30 minutes or less at any one time and for one hour or less during an eight-hour work day; should avoid lifting and carrying even up to ten pounds; should avoid bending or squatting, and could reach occasionally; could never climb or crawl, and could occasionally balance, stoop, and kneel; could not use her legs or feet for sustained repetitive action and could only use her right hand for simple grasping throughout an eight hour work day. *Id*.

On November 6, 2015, Plaintiff returned to Dr. Fuzaylov. *Id*. at 300. Plaintiff underwent a cervical trigger point injection in the past and reported doing much better as she was no longer having significant cervical spasms, was able to turn her neck better. Plaintiff also reported that the pain in the cervical region was down to 4/10, with 10 being the worst. However, Plaintiff reported increased pain in the lumbar region with difficulty standing, walking and getting in and out of car. *Id*. Dr. Fuzaylov found Plaintiff had full strength in her bilateral upper extremities except for her left hand grip, left shoulder adduction, and left shoulder external rotation. *Id*. at 301. In addition, she had full strength in the lower extremities except for bilateral hip flexion, left knee flexion, left extensor halluces longus, and left ankle; sensation was intact except at the C5 distribution on the left and L5 distribution on the right. *Id*. Plaintiff's gait was slightly antalgic. The diagnosis was lumbar radiculopathy, lumbar intervertebral disc displacement, cervical radiculopathy, and cervical disc disorder with radiculopathy mid-cervical region. Dr. Fuzaylov recommended that Plaintiff undergo physical therapy and prescribed Ambien, Tramadol, and Motrin. Dr. Fuzaylov further opined that Plaintiff was unable to return to work and remained 100% disabled. *Id*.

Plaintiff returned to see Dr. Fuzaylov on December 4, 2015. *Id*. at 304. The exam findings were essentially unchanged from Plaintiff's previous visit. Plaintiff continued with physical therapy attending three sessions in December which showed various levels of improvement and all assessments indicated that Plaintiff was responding favorably to her treatment. *Id*. at 303, 313, 315.

On January 4, 2016, Plaintiff had a follow-up exam with Dr. Fuzaylov. *Id*. at 305. Plaintiff reported the pain gradually improves with medication, rest, physical therapy and home exercise. Dr. Fuzaylov's diagnosis remained the same. *Id*. Plaintiff saw Dr. Fuzaylov on

February 1, 2016 and on February 29, 2016 for follow-up exams. *Id*. at 306-07. Plaintiff complained of increasing pain in her lower back and neck with difficulty sleeping. Dr. Fuzaylov. opined that Plaintiff remained 100% disabled. *Id*.

On April 4, 2016, Plaintiff again visited Dr. Fuzaylov and received lumbar/cervical trigger point injections. *Id*. at 333. At her follow-up exam on April 18, 2016, Dr. Fuzaylov noted the areas addressed by the trigger point injections improved by about 50% however, there was worsening pain in other areas. *Id*. at 334. He found Plaintiff had been doing better functionally but was still significantly limited by pain. *Id*. Plaintiff appeared for a follow-up exam on May 2, 2016, complaining of lower back pain and increased pain with sciatic symptoms into the left leg. *Id*. at 335. Dr. Fuzaylov recommended a lumbar epidural steroid injection, which was received on June 16, 2016 and continuing with medication. *Id*. On June 1, 2016, Plaintiff had another follow-up exam with Dr. Fuzaylov. *Id*. at 338. Plaintiff complained of lower back pain and pain into the lower left extremity, no improvement was noted. Dr. Fuzaylov assessed that Plaintiff remained permanently disabled at this time; continued to have difficulty in terms of daily activities as well as mobility and relied on daily medications to achieve physical function. *Id*. At a follow-up exam on June 29, 2016, Plaintiff reported a 60% reduction in pain after the epidural. *Id*. at 340. Dr. Fuzalov discussed reducing the amount of pain medication. He noted that Plaintiff improved with pain medication and rest and that the pain worsens with prolonged standing, walking, bending and that numbness and tingling in the left lower extremity improved. *Id*.

On December 12, 2016, Plaintiff returned to Dr. Fuzaylov complaining of increased pain in her lower back and neck. *Id*. at 387. Plaintiff advised that she had not been able obtain the Tramadol or Lidoderm patches from her insurance and this has contributed to her pain. Dr.

Fuzaylov noted from the exam weakness graded at 4/5 in the lower extremities, diminished gait that was mildly antalgic, tenderness and decreased motion in the lumbar spine, and positive straight leg raising test and slump maneuver on the left. *Id*. The diagnosis was low back pain; intervertebral disc disorders with radiculopathy, lumbar region; myalgia; other intervertebral disk displacement, lumbar region; and other cervical disc displacement, mid-cervical region. Dr. Fuzaylov recommended Plaintiff continue with the Tramadol and discussed a home exercise program. *Id*. Plaintiff continued to see Dr. Fuzaylov and no significant changes were documented after follow-up exams with him on January 11, January 27, February 8, and March 13, 2017. *Id*. at 391, 394, 397, and 401.

On April 4, 2017, Dr. Fuzaylov completed a Doctor's Progress Report for the New York State Workers' Compensation Board. *Id*. at 385. Dr. Fuzaylov reported treating Plaintiff for low back pain, intervertebral disc disorders with radiculopathy of the lumbar region, intervertebral disc displacement of the lumbar region, and cervical disc displacement. Dr. Fuzaylov listed Plaintiff's most recent symptoms as sciatica on the left more than the right, bilateral lumbar pain, and neck pain with worsening symptoms upon standing, walking, bending, and using the upper extremities. *Id*. at 386. Dr. Fuzaylov noted that Plaintiff was not working and marked the report "not applicable" with respect to how long Plaintiff's limitations would apply. *Id*.

Dr. Fuzaylov completed a Medical Assessment of Plaintiff's ability to do work-related activities on June 26, 2017. *Id*. at 407. Dr. Fuzaylov opined that Plaintiff could occasionally lift up to 15 pounds; could stand/walk for two hours for up to 20 minutes at a time and sit for two hours for up to 30 minutes at a time in an eight-hour work day; could occasionally climb, balance, stoop but could never crouch or crawl; her ability to push or pull was impaired but she could reach and handle. *Id*. at 409.

### b. Orlando Ortiz, M.D.

On January 9, 2017, Plaintiff was evaluated by Dr. Ortiz, a treating diagnostic radiologist. *Id*. at 358. Plaintiff complained of lower back pain radiating to the front side of her left leg down to her toes. Dr. Ortiz reviewed images of Plaintiff's lumbar and cervical spine and knees. Plaintiff's musculoskeletal examination was normal and Dr. Ortiz found she could ambulate independently. *Id*. at 358-361. A physical examination revealed pain to palpitation at L5-S1 on the left and in the cervical spine at C4-5, C5-6, and C6-7. Dr. Ortiz diagnosed focal left lower back pain with sacroiliac facet joint components and left neck pain with cervical facet joint component and recommended facet joint injections, and physical therapy including pelvic and sacroiliac joint stabilization. *Id*. On February 1, 2017, Plaintiff returned to Dr. Ortiz for a facet joint injection and a sacroiliac joint injection. *Id*. at 363-64. Plaintiff's pain level was 9/10, with 10 being the worst, prior to the procedure. Plaintiff experienced post-procedure relief of the typical pain symptoms. Dr. Ortiz scheduled a follow-up appointment and recommended physical therapy. *Id*. On March 1, 2017, Plaintiff underwent right C4-5, C5-6, and C6-7 cervical facet joint injections administered by Dr. Ortiz. *Id*. at 366-67. Plaintiff's post-procedure pain profile was reduced to 2/10 from 10/10.

On May 16, 2017, Dr. Ortiz competed a Medical Assessment of Ability to do Work-Related Activities statement. *Id*. at 403-05. Dr. Ortiz opined that Plaintiff could lift less than five pounds due to her lower back and neck injury/irritation. He stated that Plaintiff's ability to stand and or walk were impaired, finding that in an eight-hour day she could stand/walk a total of three hours for 20 minutes at a time and sit a total three hours for 25 minutes at a time as prolonged standing/walking/sitting aggravate her symptoms. *Id*. at 403-04. In addition, Dr. Ortiz found that Plaintiff could never climb, stoop, crouch, kneel or crawl and could occasionally

balance and did not have impairments with reaching, handling, feeling, seeing, hearing and speaking. However, her ability to push or pull was impaired as it aggravated her neck pain. *Id*. at 404-05.

### c. Matthew Skolnick, M.D.

On January 6, 2015, Plaintiff saw Dr. Matthew Skolnick, an orthopedic specialist for a Worker's Compensation examination at the request of Plaintiff's workers compensation carrier. *Id*. at 276. Dr. Skolnick's examination revealed a reduced range of motion in the cervical spine with minimal paraspinal tenderness to superficial and light palpation bilaterally, minimal trapezius tenderness to superficial and light palpation bilaterally, upper extremities demonstrated muscle strength 4/5 throughout; reduced range of motion of the lumbar spine with minimal paraspinal tenderness upon palpation bilaterally, lower extremities demonstrated muscle strength 4/5 throughout, straight leg test was negative, Plaintiff was able to walk on heels and toes; reduced range of motion of the left shoulder with no tenderness or palpation and no crepitus was noted; decreased flexion of the right knee with tenderness to palpation over the superior medial patella. *Id*. at 278-79. Dr. Skolnick diagnosed recurrent cervical spine strain, recurrent lumbar spine strain, left shoulder sprain and right knee sprain. He noted that Plaintiff put forth a suboptimal effort during the exam. *Id*. He further noted that Plaintiff had a pre-existing condition from an earlier work-related slip and fall that Plaintiff was undergoing treatment for when the September 17, 2014 accident occurred. Dr. Skolnick opined that no ongoing physical therapy or orthopedic treatment would be reasonable or necessary for the accident of record and that Plaintiff should follow a home exercise program. In addition, Dr. Skolnick indicated that there was no evidence of a further causally related disability, from an orthopedic standpoint, and that Plaintiff was capable of returning to work without restrictions. *Id*. at 279-80.

### d. Jerome Caiati, M.D.

On May 14, 2015, Jerome Caiati, M.D. performed an Internal Medicine Examination on the Plaintiff at the request of the SSA. *Id*. at 285. Plaintiff's chief complaints were cervical pain, thoracic pain, low back pain, right knee pain and headaches. Plaintiff advised that she was able to cook, clean, do laundry, go shopping, shower/bathe, and dress herself variably. *Id*. The examination revealed that Plaintiff had a normal gait, could walk on her heels and toes without difficulty, her squats were limited to half with complaints of low back pain, she needed no assistive, and no help was required changing for the exam or for getting on or off the exam table. *Id*. Dr. Caiati noted that Plaintiff experienced cervical pain with a limited range of motion; lumbar spine pain with limited range of motion; pain with straight leg raising and shoulder range of motion testing; and that she had a full range of motion of hips, knees, and ankles. *Id*. at 287. Dr. Caiati diagnosed a history of shoulder repair and headaches with an unclear diagnosis as to Plaintiff's history of cervical pain, thoracic pain, low back pain, and right knee pain. *Id*. No prognosis was set forth. Dr. Caiati found that Plaintiff would have no restriction sitting, standing, walking and climbing; minimal limitations to the right and left arms with reaching, pushing, and pulling due to cervical pain; mild limitation with bending due to low back pain; and moderate limitations with lifting due to cervical and low back pain. *Id*. at 288.

### e. Cory Stein, D.C.

On May 29, 2015, Cory Stein, D.C. performed a chiropractic examination of the Plaintiff at the request of Plaintiff's workers compensation insurance carrier. *Id*. at 293. According to Dr. Stein, Plaintiff complained of neck, back, knee pain, and headaches associated with a work-related slip and fall occurring on September 17, 2014. At the time of the examination, Plaintiff was receiving massage therapy, chiropractic treatment and had epidural injections. *Id*. at 293.

Dr. Stein identified Plaintiff as a blonde-haired, blue-eyed female, *id*. at 294, while Dr. Skolnick identified Plaintiff as a brown-haired, brown-eyed female. *Id*. at 278. The examination found that Plaintiff had a full range of motion in her cervical and lumbar spine, her upper and lower muscle strength was full, and her sensation was within normal limits. Dr. Stein diagnosed resolved cervical, thoracic, and lumbar sprains/strains. *Id*. at 295. He opined that chiropractic treatment was no longer necessary adding that Plaintiff was capable of working and performing activities of daily living without any limitations. *Id*.

### C. Medical Expert Evidence

Steven A. Golub, M.D., an internist, appeared as a medical expert at the August 30, 2017, administrative hearing to review Plaintiff's case. *Id*. at 54. Dr. Golub testified that an MRI scan of Plaintiff's cervical spine showed some disc bulging and an annular tear, but no significant nerve root compression. *Id*. at 56-57. He did not examine Plaintiff but provided testimony based upon a review of her medical files. *Id*. at 55. According to Dr. Golub, Plaintiff's impairments did not meet or equal a listed impairment. *Id*. at 59. Dr. Golub opined that in an eight-hour workday Plaintiff could lift and carry ten pounds frequently and twenty occasionally; sit for six hours and stand/walk for three to four hours; reach overhead occasionally with the left upper extremity; and climb stairs, stoop, kneel, crawl and crouch occasionally. Plaintiff could not be exposed to unprotected heights, extreme cold and vibrations. *Id*. at 58-59. Dr. Golub further testified that Plaintiff's complaints of pain were consistent and that there was no evidence that her pain has improved. *Id*. at 60.

### D. Vocational Evidence

Rocco Meola was called as a vocational expert at the August 30, 2017 administrative hearing to review Plaintiff's case. *Id*. at 62. Mr. Meola testified that an individual of Plaintiff's

age, education and work history who was able to lift twenty pounds occasionally, ten pounds frequently; sit for six hours in an eight-hour workday and stand/walk for four hours in an eight-hour workday; with no work around scaffolds; climb stairs frequently; balance; stoop occasionally; kneel, crouch and crawl; lift overhead on the left occasionally; and occasional exposure to extreme cold and heat and vibrations, could do the job as director of the daycare program but not as a teacher. *Id*. at 63-64. He further testified that given the same hypothetical individual with the same restrictions except she could only stand/walk for a total of two hours in an eight-hour work day and only sit for a total of two hours in an eight-hour work day with a 30 minute limit, could not perform any work. *Id*. at 64. In addition, Mr. Meola, testified that if the individual could lift less than five pounds; stand/walk for a total of three hours in an eight-hour workday; and sit for a total of three hours in an eight-hour work day, she could not work. *Id*. at 64-65. He similarly testified that if an individual was off task 15% or more of the time due to pain, she would be unable to perform. *Id*. at 65.

## DISCUSSION

### I. Standard Of Review

#### A. Review of the ALJ's Decision

In reviewing a decision of the Commissioner, a district court may set aside a determination "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin,* 802 F.3d 370, 374-75 (2d Cir. 2015) (citations omitted); *see* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013) (quoting *Richardson v. Perales,* 402 U.S. 389, 401) (internal quotation marks omitted)). Furthermore, the findings of the Commissioner as to

any fact, if supported by substantial evidence, are conclusive, 42 U.S.C. § 405(g), and thus, the reviewing court does not decide the case *de novo. Halloran v. Barnhart,* 362 F.3d 28, 31 (2d Cir. 2004); *see Clark v. Comm'r of Soc. Sec.,* 143 F.3d 115, 118 (2d Cir. 1998) ("[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record"); *Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir. 1991) (holding that if the court finds that there is substantial evidence to support the Commissioner's determination, the decision must be upheld, "even if [the court] might justifiably have reached a different result upon a *de novo* review").

### B.  The Disability Determination

To be eligible for disability benefits under the Act, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than twelve months."  42 U.S.C. § 423(d)(1)(A); *see Burgess v. Astrue,* 537 F.3d 117, 119 (2d Cir. 2008).  The Act further states that this impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A); *see Shaw v. Chater,* 221 F.3d 126, 131-32 (2d Cir. 2000). *Nascimento,* 90 F. Supp. 3d at 51; *Marinello v. Comm'r of Soc. Sec.,* 98 F. Supp. 3d 588, 592-93 (E.D.N.Y. 2015).

In order to determine whether a claimant is disabled within the meaning of the Act, the SSA has promulgated regulations prescribing a five-step sequential analysis for evaluating disability claims.  *See* 20 C.F.R. §§ 404.1520; 416.920.  The Second Circuit has summarized this procedure as follows:

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant can perform.

*Telavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012). The claimant bears the burden of proof at steps one through four of the sequential inquiry, while the burden shifts to the Commissioner at step five to show that the claimant is capable of working. *Id.*; *Nascimento,* 90 F. Supp. 3d at 51. In making these determinations, the Commissioner "must consider four factors '(1) the objective medical facts; (2) diagnosis or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; (4) the claimant's educational background, age, and work experience.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983)(per curiam)).

## II. Analysis

### A. The ALJ's Ruling

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 17, 2014. *Id*. at 17. At step two, the ALJ determined that the Plaintiff's cervical and lumbar spine impairment qualified as severe impairments pursuant to 20 C.F.R. 404.1520(c). The ALJ mentioned that Plaintiff's left shoulder impairment and her headaches did not qualify as severe impairments. *Id*. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet

or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R §§ 404.152(d), 404.1525 and 404.1526). *Id*. at 18. At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) except as follows: in an eight-hour workday, can sit for six hours, stand/walk for four hours, and lift and carry 20 pounds occasionally. *Id*. The Plaintiff can never climb ladders or scaffolds and can frequently climb stairs; can constantly balance and can occasionally stoop, kneel, crouch and crawl; can occasionally reach overhead with the left upper extremity and constantly with the right upper extremity; can constantly reach, handle, finger, push and pull with the bilateral upper extremities; can never be exposed to hazards or machinery, can occasionally be exposed to extreme cold/heat and vibration, and can constantly be exposed to humidity and wetness, noise, orders, fumes and pulmonary irritants. At step five, the ALJ found that the Plaintiff was capable of performing past relevant work as an owner/director of a day care program as performed in general economy (sedentary) or as the Plaintiff testified it was performed (light). The ALJ noted, this work does not require the performance of work-related activities precluded by the claimant's RFC. As a result, the ALJ found Plaintiff was not disabled under the Act. Tr. at 15-22.

Plaintiff moves for judgement on the pleadings, arguing: 1) the ALJ failed to properly weigh the medical opinion evidence; and 2) the ALJ failed to properly evaluate Plaintiff's testimony. ECF No. 15. at 11-24. Defendant cross-moves for judgement on the pleadings, arguing: 1) the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence and should be affirmed. ECF No. 17 at 10-24.

### B. Weight of Medical Evidence

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the Act." *Pena ex rel. E.R. v. Astrue,* 11-CV-1787, 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (internal quotation marks omitted); *see* 20 C.F.R. §§ 404.1527(c); 416.9279(c).  Social Security regulations require that an ALJ give "controlling weight" to the medical opinion of an applicant's treating physician so long as that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2); *see Halloran,* 362 F.3d at 32.  Medically acceptable clinical and laboratory diagnostic techniques include consideration of a "patient's report of complaints, or history, [a]s a diagnostic tool."  *Green-Younger v. Barnhart,* 335 F.3d 99, 107 (2d Cir. 2003); *see Petrie v. Astrue,* 412 F. App'x 401, 405 (2d Cir. 2011) ("The opinion of a treating physician is accorded extra weight because the continuity of treatment he provides and the doctor/patient relationship he develops place[s] him in a unique position to make a complete and accurate diagnosis of his patient").  Although a treating physician may share an opinion regarding the severity of the disability, the ultimate decision of whether an individual is disabled is "reserved to the Commissioner."  20 C.F.R. § 404.1527(d)(1); *see Snell v. Apfel,* 177 F.3d 128, 133 (2d Cir. 1999).

Under the treating physician rule, an ALJ must give special evidentiary weight to the opinion of a treating physician.  *See Clark*, 143 F.3d at 119.  Specifically, the treating physician rule "mandates that the medical opinion of the claimant's treating physician [be] given controlling weight if it is well supported by the medical findings and not inconsistent with other

substantial record evidence." *Shaw*, 221 F.3d at 134; *see also, e.g., Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir 1999).[1]

When the ALJ declines to give a treating physician's opinion controlling weight, the ALJ "must consider various factors to determine how much weight to give to the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). These factors include "(i) the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion, (iii) consistency of the opinion with the entirety of the record; (iv) whether the treating physician is a specialist; and (v) other factors that are brought to the attention of the SSA that tend to support or contradict the opinion." *Id.*; *see Selian,* 708 F.3d at 418. The ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Burgess,* 537 F.3d at 129-30; *see* 20 C.F.R. § 404.1527(d)(2). Failure to provide "good reasons" for the weight assigned to a treating physician constitutes a ground for remand. *Snell,* 177 F.3d at 133; *see Halloran,* 362 F.3d at 32-33 ("We do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physicians['] opinion").

Upon careful review of the administrative record and the ALJ's decision, the undersigned finds that the ALJ failed to properly evaluate the medical evidence. As set forth below, the ALJ accorded little weight to the opinions of Plaintiff's three treating physicians and assigned greater weight to the non-examining medical expert and consultative examiners, without articulating

---

[1] The rule, as set forth in the regulations, provides: Generally, we give more weight to opinions from your treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

"good reasons" for affording little weight to the opinions of each of Plaintiff's three treating physicians.

First, with respect to all three of Plaintiff's treating physicians, the ALJ assigned "little weight" to their opinions as he found their opinions to be "inconsistent with the claimant's statements of daily living as reported to the consultative examiner." Tr. at 20-21. The ALJ reached this conclusion despite Plaintiff's testimony to the contrary at the administrative hearing and the records of Plaintiff's treating physicians indicating limitations to Plaintiff's ability to perform household tasks. When assessing a Plaintiff's credibility SSA regulations require an ALJ "to take the claimant's report of pain and other limitations into account, but the ALJ is not obligated to accept the claimant's subjective complaints without question." *Campbell v. Astrue*, 465 Fed.Appx. 4, 7 (2d Cir. 2012) (alterations omitted) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)); *see also Fontanarosa v. Colvin*, 13-CV-3285, 2014 WL 4273321, at *12 (E.D.N.Y. Aug. 28, 2014). "At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1529(b)). Second, "the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, including claimant's statements, treating physician's reports, and other medical professional reports." *Fontanarosa*, 2014 WL 4273321, at *12 (citing *Whipple v. Astrue*, 479 Fed.Appx. 367, 370-71 (2d Cir. 2012)). "To the extent that a claimant's allegations of pain 'are not substantiated by the objective medical evidence, the ALJ must engage in a credibility inquiry.'" (quoting *Meadors v. Astrue*, 370 Fed.Appx. 179, 184 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vii)).

The ALJ must consider these seven faction in making a credibility determination: (1) the claimant's daily activities; (2) the location, duration, frequency, and

intensity of claimant's pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication claimant takes or has taken to alleviate pain or other symptoms; (5) any treatment, other than medication, the claimant has received; (6) any other measures the claimant employs to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3).

Here, the ALJ found that Plaintiff's statements regarding her activities of daily living given to the consultative examiner were inconsistent with the opinions of her treating physicians and used this inconsistency as the basis for affording the opinion of the treating physicians little weight. Tr. at 20-21. Specifically, the ALJ relied upon on Plaintiff's statements to Dr. Caiati in May 2015 that she was able to cook, clean, do laundry, go shopping variably; shower/bathe, and variably dress herself; watch television; listen to the radio and go to doctor appointments without consideration of her testimony at the administrative hearing or her statements to her treating physicians. *Id*. at 285.

With respect to performing daily activities "[t]he Second Circuit has repeatedly recognized that '[a] claimant need not be an invalid to be found disabled.'" *Colon v. Astrue*, 10-CV-3779, 2011 WL 3522060, at *14 (E.D.N.Y. Aug. 10, 2011) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir. 1988) (internal brackets in the original). "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Valet v. Astrue*, 10-CV-3282, 2012 WL 194970, at *19 (E.D.N.Y. Jan. 23, 2012) (quoting *Woodford v. Apfel*, 93 F.Supp.2d 521, 529 (S.D.N.Y. 2000).[2] Plaintiff testified at the

---

[2]*See also Mitchell v. Colvin*, 09-CV-5429, 2013 WL 5676289, at *7 (E.D.N.Y., Oct. 17, 2013) ("[E]vidence of a claimant's ability to complete household chores does not defeat a claim for disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'") (quoting *Woodford*, 93 F.Supp.2d at 529); *Balsamo v. Charter*, 142 F.3d 75, 81 (2d Cir 1998) ("'When a disabled person gamely chooses to

administrative hearing with regard to her daily activities. Plaintiff testified that she tries to do grocery shopping but can only manage to pick up a few items each day and that she cannot do any housework. Tr. at 52. The ALJ did not follow up with Plaintiff any further to clarify the particular nature of Plaintiff's activities. At no point during the hearing did the ALJ ascertain the extent of Plaintiff's daily activities other than a few questions with regard to her ability to drive and to shop. In contrast, the record is replete with statements Plaintiff made regarding pain to her treating physicians. Plaintiff's treating physicians repeatedly found that Plaintiff could perform tasks however, with strict limitations and that certain tasks would aggravate her symptoms.

"If the ALJ rejects [P]laintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Ingrassia*, 239 F.Supp.3d at 627 (quoting *Correal-Englehart v. Astrue*, 687 F.Supp.2d 396, 435 (S.D.N.Y. 2010). "Where the ALJ neglects to discuss at length his credibility determination with sufficient detail to permit the reviewing court to determine whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence, remand is appropriate." *Ingrassia*, 239 F.Supp.3d at 627. (citing *Correal-Englehart*, 687 F.Supp.2d at 435-36; *see also Gross v. Comm'r of Soc. Sec*., 08-CV-41372011 WL 128565, at *5 (E.D.N.Y. Jan. 14, 2011) (finding the ALJ committed legal error by failing to apply factors two through seven); *Valet*, 2012 WL 194970, at *22 (remanding because

---

endure pain in order to pursue important goals,' such as attending church and helping his wife on occasion go shopping for their family, 'it would be a shame to hold this endurance against him in determining benefits unless his conduct truly showed that he is capable of working.'") (quoting *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989)); *Murdaugh v. Sec'y. of Dep't of Health & Human Servs.*, 837 F.2d 99, 102 (2d Cir. 1988) (holding that a claimant who watered a garden, occasionally visited friends, and was able to get on and off an examination table was disabled because he could not perform sedentary work).

the ALJ failed to address all seven factors).  Here, the ALJ has not properly described his rational for discrediting Plaintiff's testimony at the administrative hearing and relying solely upon the report of Dr. Caliati to support his conclusion that the opinion of the treating physicians should be afforded little weight in light of Plaintiff's ability to do household chores.  Thus, for this reason alone, the undersigned recommends that this matter be remanded to the ALJ.

Second, with respect to Dr. Fuzaylov and Dr. Ortiz, the ALJ assigned "little weight" to their opinions as he found that their conclusion of disability was "reserved to the Commissioner."  Tr. 20-21.  However,

> Reserving the ultimate issue of disability to the Commissioner relieves the [SSA] of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation, under *Schaal* and § 404.1527(d)(2), to explain why a treating physician's opinions are not being credited. The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, even-and perhaps especially-when those disposition are unfavorable.

*Snell,* 177 F.3d at 134; *see also Castro v. Comm'r of Soc. Sec*., No. 15-CV-336, 2016 U.S. Dist. LEXIS 43782, at *49, 2016 WL 1274542 (E.D.N.Y. Mar. 31, 2016); *Austin v. Colvin*, No. 14-CV-861, 2016 U.S. Dist. LEXIS 10200, 2016 WL 335255 (W.D.N.Y. Jan. 28, 2016).  Here, the ALJ's determination that the opinions of two of the three treating physicians, who each established a doctor/patient relationship with the Plaintiff were afforded little weight by finding that the "conclusion is reserved to the Commissioner" fails to provide good reasons for not crediting these medical opinions regarding Plaintiff's limitations.

Finally, the ALJ's rationale for affording little weight to the opinions of Plaintiff's treating physicians is faulty on a third, independent basis for each.  With respect to the opinion of Dr. Fuzaylov, a pain management specialist who treated Plaintiff from November 2015 through June 2017, the ALJ assigned "little weight"  to the opinion concerning the nature and severity of

Plaintiff's impairments because, according to the ALJ, Dr. Fuzaylov's opinion was not supported by the Doctor's office notes which show improvement by the Plaintiff. Tr. at 20. The ALJ found that during this period Plaintiff improved following cervical trigger point injections and, also had improvement of the lumbar pain with medications and anti-inflammatories. *Id*. at 21. While the record suggests that Plaintiff experienced periods of improvement or relief under the care of Dr. Fuzaylov, the ALJ failed to reference that, according to Dr. Fuzaylov, these periods were often temporary and coincided with treatment and/or medication. *Id*., *see id*. at 334 (Plaintiff's pain improved 50% after receiving trigger point injection last visit, but other areas are reportedly worse); *id*. at 338 (no improvement was noted); *id*. at 340 (reported a 60% reduction in pain after the epidural); *id*. at 387 (function is significantly affected by her pain at this time); *id*. at 391 (radiating pain into the lower left extremity is returning).

Thus, the ALJ rejected Dr. Fuzaylov's "medical opinion when it supported a finding that [P]laintiff was disabled; yet at the same time relied on [his] observations, that [P]laintiff's condition was improving to provide proof that [P]laintiff was not disabled. Such an inconsistent use of the medical evidence undermines any argument that [the treating physician's] opinion was so unreliable that it should not have been assigned controlling weight." *Shaw*, 223 F.3d at 135. "When the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for the discrepancy." *Dowling v. Berryhill*, 16-cv-4784, 2018 WL 472817, at *4 (E.D.N.Y. Jan.18, 2018). In forming his own conclusions as to the import of Dr. Fuzaylov's findings and their inconsistency with a conclusion of total disability, the ALJ improperly substituted his "own assessment of the relative merits of the objective evidence and subjective complaints for that of the treating physician." *Garcia v. Barnhart*, 01-CV-8300, 2003 WL 68040, at *7 (S.D.N.Y. Jan. 7, 2003).

The opinion of Dr. Ortiz, Plaintiff's treating diagnostic radiologist, was also assessed "little weight" by the ALJ. *Id*. at 21. The ALJ found that, in addition to the factors already discussed, that Dr. Ortiz's opinion was not supported by his own treatment records showing Plaintiff's normal musculoskeletal exam. *Id*. at 21. Dr. Ortiz treated the Plaintiff from January 2017 through May 2017. During this period, Dr. Ortiz administered four cervical facet joint injections and a sacroiliac joint injection to the Plaintiff along with other forms of treatment. Dr. Ortiz opined that Plaintiff could lift less than five pounds due to her lower back and neck injury/irritation. *Id*. at 403. He stated that Plaintiff's ability to stand and or walk were impaired, finding that in an eight-hour day Plaintiff could stand/walk a total of three hours for 20 minutes at a time and sit a total three hours for 25 minutes at a time as prolonged standing/walking/sitting aggravate her symptoms. *Id*. at 403-04. The ALJ focused on one finding of Dr. Ortiz, that the Plaintiff's musculoskeletal exam was normal while offering no explanation as to why the other findings in the opinion were not credited. However,

> the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion …. [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.

*Balsamo*, 142 F.3d at 81 (quoting *McBrayer v. Sec. of Health & Human Servs*., 712 F.2d 795, 799 (2d Cir. 1983)). Deference to a Plaintiff's treating physician is appropriate because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical evidence alone or from reports of individual examinations." 20 C.F.R. § 404.1537(c)(2). The SSA is required to explain the weight it gives to the opinions of a treating physician. *See* 20 C.F.R. § 404.1527(d)(2) ("We will always give

good reasons in our notice of determination or decision for the weight we give your treating source's opinion.")  "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is ground for remand."  *Snell,* 177 F.3d at 133 (citing *Schaal v. Apfel*, 134 F3.d 496, at 505 (2d Cir 1998

The ALJ also assigned "little weight" to the opinion of Dr. Lynch, Plaintiff's treating pain management physician.  *Id.* at 20-21.  The ALJ found that Dr. Lynch's opinion was based on a one-time examination and used this fact to support his determination that her opinion should be afforded little weight.  A "treating physician" is a physician "who has provided the [claimant] with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual." *Sokol v. Astrue*, No. 04-CV-6631 (KMK) (LMS), 2008 U.S. Dist. LEXIS 114995, 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (internal quotation marks omitted).  The record is clear that Plaintiff was examined by Dr. Lynch on September 19, 2014, November 20, 2014, January 2, 2015 and January 12, 2015.  *Id.* at 241, 247, 346, 356.  In addition, Dr. Lynch recommended treatment and ordered various diagnostic testing for Plaintiff.  Thus, the ALJ determination to afford this treating physician's opinion little weight is based upon an erroneous conclusion that that Dr. Lynch's opinion was based on a one-time examination.

"Because it is unclear whether the Commissioner considered all relevant factors in determining the weight to give to the report of Plaintiff's treating physicians, and because application of the correct legal principles does not necessarily lead to only one conclusion, we must remand the case to the Commissioner for further consideration." *Reyes v. Apfel*, 98 Civ. 0644 (LBS), 1999 WL 39538, at *4 (S.D.N.Y., Jan. 29, 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Because of the lack of specificity of ALJ Scott's decision and the

inconclusiveness of the record, it is appropriate to remand the case to HHS in order to ensure that the correct legal principles are applied to the determination of Johnson's disability claim."); *see also Blizzard v. Barnhart*, 03-Civ-10301, 2005 WL 946728 at *13 (S.D.N.Y., April 25, 2005). For this reason alone, it is respectfully recommended that this matter shall be remanded to the ALJ to allow the ALJ to properly develop and clarify his reasons for his determination that the opinions of all three of Plaintiff's treating physicians be given little weight, however I am compelled to discuss certain other legal errors apparent in the ALJ's decision.

In addition to failing to discuss the treating physician's rule, the ALJ also improperly weighted the opinions of the non-examining medical expert witness and consulting examining physicians. The opinions of non-treating sources, such as a non-examining medical expert and consultative examiners, should generally be given less weight than treating sources in the overall evaluation of disability. *See Vargas,* 898 F.2d 293, 295-96 (2d Cir. 1990); *Selian,* 708 F.3d at 419 ("ALJs should not rely heavily on the findings of consultative physicians after a single examination"); *see Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990) ("[I]n evaluating a claimant's disability, a consulting physician's opinions or report should be given limited weight . . . because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day."); *Hidalgo v. Bowen,* 822 F.2d 294, 297 (2d Cir. 1987) (A "corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis"); *Filocomo v. Chater,* 944 F. Supp. 165, 169 (E.D.N.Y. 1996) ("[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight").

Moreover, the Act's regulations point out that even where a treating physician's opinion is not entitled to "controlling weight," the opinion is generally entitled to "more weight" than the opinions of non-treating and non-examining sources. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see* Social Security Ruling 96-2p (S.S.A. July 2, 1996) ("In many cases a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight").

In making this determination, the ALJ gave "great weight" to the non-examining medical expert Dr. Steven A. Golub. Despite the fact that Dr. Goulb never examined Plaintiff and his assessment was based entirely upon a review of Plaintiff's medical records, the ALJ assigned "great weight" to his determination, which was at odds with the opinion of the treating physicians, who found Plaintiff's exertional abilities to be much more limited. In addition, the ALJ's reliance on Dr. Golub's review of the entire record is somewhat misplaced. The ALJ stated, according to Dr. Goulb, that Plaintiff "has had trigger point injections but no epidural injections." *Id.* at 21. The record is clear that Plaintiff received an epidural injection on June 16, 2016 from Dr. Fuzaylov, and the effects were discussed during Plaintiff's follow-up appointment on June 29, 2016. *Id.* at 339-40. Further, in response to a question from the ALJ regarding the Plaintiff's exams Dr. Goulb testified as follows:

> Q.  Well, the CE – you understand, sir, the CE sees the claimant for just a few minutes.
> A.  Yes, but he called it an exam. So I just refer to that exam to see what –
> Q.  Okay, fine.
> A.  … In January of '17 in 10-F she did have injection into the SI joint. And I think it was repeated three times, January, February, March. I did not see anything regarding epidural steroid unless it wasn't in the record for some reason. But, I didn't catch it. I don't think I would've missed it. I might've missed it once, but I don't think I would've missed it more than one. So I'm not sure about that.

In response to a question from the ALJ as to Plaintiff's RFC limitations, Dr. Goulb testified as follows:

Q. Do you have any opinion based upon the medical evidence that – and especially, you know, her treating doctor has – there is a treating physician role where they're giving more weight than a CE. But do you have any – can you tell me what the claimant's limitations would be?

A. Yes, I think lifting and carrying 10 pounds frequently and 20 occasionally. There may be a proviso in that with – I'm not sure the left shoulder how dysfunctional that is with regard to lifting.

The Second Circuit has made clear that "reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisors' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." *Vargas*, 898 F.2d at 295-96; *see Filocomo v. Chater,* 944 F. Supp. 165, 169 (E.D.N.Y. 1996) ("[T]he conclusions of a physician who merely reviews a medical file and performs no examination are entitled to little if any weight"); *see also Selian,* 708 F.3d at 419; *see Cruz*, 912 F.2d at 13; *Hidalgo*, 822 F.2d at 297. Nevertheless, despite the factual errors in Dr. Goulb's testimony and the lack of an examination by Dr. Goulb, the ALJ afforded his testimony great weight while at the same time affording little weight to the opinions of Plaintiff's treating physicians.

In addition, the ALJ assigned "great weight" to the opinion of Dr. Skolnick, who performed an independent medical exam of Plaintiff. Tr. at 19. Dr. Skolnick's report was performed the request of the Worker's Compensation insurance carrier on January 6, 2015. *Id.* 275-81. The weight afforded to the report of Dr. Skolnick is particularly troubling as Dr. Skolnick provided this report in connection with a workman's compensation claim. *See Crowe v. Comm'r of Soc. Sec.*, 01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20. 2014)("the opinions were rendered in the context of [Plaintiff's] WC claim, which is governed by standards different from the disability standards under the Social Security Act") (citing *Gray v. Charter*, 903 F.Supp. 293, 301 (N.D.N.Y. 1995) ("Workers' compensation determinators are directed to

the worker's prior employment and measure the ability to perform that employment rather than using the definition of disability in the Social Security Act.")).

"Great weight" was also assigned to the opinion of Dr. Stein who performed a chiropractic examination of the Plaintiff on May 29, 2015 again at the request of Plaintiff's workers compensation insurance carrier. Tr. at 20. This opinion and the opinion of Dr. Skoolnick were both afforded great weight despite the inconsistent physical descriptions of Plaintiff. Dr. Stein identified Plaintiff as a blonde-haired, blue-eyed female, *id*. at 294, while Dr. Skolnick identified Plaintiff as a brown-haired, brown-eyed female. *Id*. at 278.

Finally, the May 14, 2015 opinion of Dr. Caiati, a consultative internist, was assigned "some weight" by the ALJ. *Id*. at 19. Dr. Caiati reported that despite symptoms, the Plaintiff advised she is able to perform activities of daily living. *Id*. at 285. The ALJ assigned "some weight" to this opinion reasoning that "a good explanation of findings provides a convincing basis for the opinion, that it is based on program knowledge, is consistent with other opinions of record and based on a thorough examination." *Id*. at 19. The Second Circuit has instructed, however, that "ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian,* 708 F.3d at 419; *see Giddings v. Astrue,* 333 F. App'x 649, 652 (2d Cir. 2009) (holding a consultative physician's opinion is generally entitle to "little weight"). In addition, despite claiming to only afford "some weight" to this report, the ALJ used the conclusions of Dr. Caiati regarding Plaintiff's ability to perform basic household chores as a basis to afford the opinions of Plaintiff's treating physicians little weight.

As pointed out by Plaintiff, not only did the ALJ err by assigning great weight to the testimony of three non-treating doctors without providing a proper explanation for his conclusion, he gave the opinions of Dr. Skolnick, Dr. Stein and Dr. Golub great weight despite

the inconsistencies between them. For example, while the opinions of Dr. Skolnick and Dr. Stein were similar in that they found Plaintiff had no limitations, Dr. Golub opined that Plaintiff could lift and carry ten pounds frequently and twenty occasionally; sit for six hours and stand/walk for three to four hours; reach overhead occasionally with the left upper extremity; and climb stairs, stoop, kneel, crawl and crouch occasionally. *Id*. at 58-59, 279-80, 295. The opinion of Dr. Golub more closely resembled that of Plaintiff's treating physician Dr. Ortiz, which was assigned little weight. Dr. Ortiz opined, in part, that Plaintiff could stand/walk a total of three hours for 20 minutes at a time and sit a total three hours for 25 minutes at a time as prolonged standing/walking/sitting aggravate her symptoms. *Id*. at 403-404.

On remand, the ALJ should reevaluate the consulting physicians' opinions as well as the non-examining physicians' opinions after properly weighing the treating sources' opinions. He is reminded that, in doing so, consulting physicians' opinions are usually entitled to less weight than those of treating physicians, and a non-examining physician's opinion is generally entitled to the least weight of all.

In sum, the ALJ failed to provide "good reasons" for declining to accord controlling weight to the treating physicians' opinions. *Snell,* 177 F.3d at 133. Such failure "by itself warrants remand." *Selian,* 177 F.3d at 133. Accordingly, the undersigned respectfully recommends that the matter be remanded to allow the ALJ to properly develop and clarify his reasons for the weight assigned to Plaintiff's treating physicians as well as the consultative examiners and the medical expert witness.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel for each of the parties. Any written objections to the Report and Recommendation must be filed

with the Clerk of the Court within fourteen (14) days of service of this report.  28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  **Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court of Court of Appeals.**  *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision.").

Dated: Central Islip, New York
       August 27, 2019

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge